IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PROXENSE, LLC<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>TARGET CORPORATION<br><br>　　　　　　　　　Defendant. | Case No. 6:20-cv-879-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS COUNT I OF PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

**I.     INTRODUCTION**

In its September 28, 2020 complaint for patent infringement, Plaintiff Proxense, LLC's ("Plaintiff") infringement allegations against Defendant Target Corporation ("Target") were premised entirely on joint infringement theories, which only apply to method claims, and require allegations that the collective infringers are a joint enterprise or subject to the direction and control of one of the infringers. D.I. 1; D.I. 12. On November 30, 2020, Target moved to dismiss Plaintiff's complaint because Plaintiff failed to plausibly allege these joint infringement requirements. D.I. 12.

In response, Plaintiff filed the First Amended Complaint on December 14, 2020. D.I. 15. In the First Amended Complaint, Plaintiff dropped its joint infringement claims and now only alleges that Target is liable as an indirect infringer for direct infringement by Target's customer, and where Target's customer (1) "uses" the asserted system claims (1, 7-9) of U.S. Patent No. 10,455,533 ("the '533 patent"), and (2) performs all of the steps of the asserted method claims (11, 17-19) of the '533 patent. D.I. 15 at ¶¶ 43-65. As such, and as a threshold matter, Plaintiff implicitly acknowledges that it has *no* plausible claim for: (1) direct infringement of any claim of

the '533 patent by Target, (2) joint infringement of any claim of the '533 patent by Target or Target's customer, (3) indirect infringement by Target for Target's customer making, selling, offering for sale, or importing any of the system claims of the '533 patent, nor (4) vicarious liability by Target for Target's customer's actions related to any of the system claims of the '533 patent. *Id*.; *see also* D.I. 12.

Instead, Plaintiff attempts to preserve a narrower, indirect infringement theory, based on Target's alleged encouragement of and contribution to its customers' use of the accused "Target deployed beacon systems in Target retail stores." (D.I. 15 at ¶¶ 43-50). While this theory will be shown to fail in its entirety, at the pleading stage, Plaintiff still has not sufficiently and plausibly alleged that Target's customer controlled the ability to place the claimed system as a whole into service. Accordingly, Target moves for dismissal of Count I (infringement of system claims 1, 7-9) of the First Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## II.   LEGAL STANDARD

### A.   Rules 8(a)(2) and 12(b)(6)

Rule 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see* Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not require "detailed factual allegations," to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Instead, a complaint must include "further factual enhancement" that would transform a claim from a "sheer possibility that a defendant has acted unlawfully" into "facial plausibility," where a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - 'that the pleader is entitled to relief.'" *Gonzalez*, 577 F.3d at 603 (quoting *Iqbal*, 556 U.S. at 679).

### B. Indirect Infringement

"'[T]he pleading requirements set forth in [*Twombly* and *Iqbal*] apply' to claims of induced and contributory infringement." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016). The first step of showing indirect infringement is identifying an underlying act of direct infringement: "a finding of direct infringement is predicate to any finding of indirect infringement." *Motorola*, 870 F.3d at 1331 (citing *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920, 134 S. Ct. 2111, 2116 (2014)). Although there are other requirements to plead induced or contributory infringement, those requirements are not the subject of this present Motion to dismiss Count I of the First Amended Complaint, nor of Target's prior Motion to dismiss the original Complaint (D.I. 12) and, therefore, are not addressed here.

### C. Direct Infringement based on "Use" of a Claimed System

Under 35 U.S.C. § 271(a), the acts of direct infringement of a system claim include making, using, offering to sell, selling, or importing into the United States the patented invention. A direct infringement claim based on the act of *using* an allegedly infringing system must be supported by allegations that an alleged direct infringer "put the claimed invention into service, *i.e.*, control[led]

3

the system and obtain[ed] benefit from it." *Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.*, 631 F.3d 1279, 1286 (Fed. Cir. 2011).  In other words, "to prove an infringing 'use' of a system under § 271(a), a patentee must demonstrate 'use'—that is, 'control' and 'benefit'—of the claimed system by an accused direct infringer." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1328 (Fed. Cir. 2017).

In establishing "use" of a claimed system by an alleged direct infringer, the plaintiff must further "demonstrate that the direct infringer obtained 'benefit' from *each and every element* of the claimed system", **and** "the direct or indirect control required 'is the ability to place the system *as a whole* into service'." *Motorola*, 870 F.3d at 1329 (citing *Centillion*, 631 F.3d at 1284) (emphasis added).

### III.   STATEMENT OF FACTS

Claims 1 and 11 of the '533 patent are independent claims and the other claims depend from Claims 1 or 11.  D.I. 1-1 at claims 1-20.

#### A.   The Asserted System Claims (1, 7-9) of the '533 Patent

Asserted Claim 1 (reproduced below) is a system claim including at least three distinct system components (identified in italics below):

> A system comprising:
>
> a *first wireless device* having a known physical location, the first wireless device including; a first wireless transceiver configured to transmit a beacon including a source identifier, the source identifier indicating a source of the beacon;
>
> a *second wireless device* including:
>
>> a second wireless transceiver having an active mode in which power is consumed, and a sleep mode in which power is conserved;
>>
>> a timer operatively coupled to the second wireless transceiver used to indicate when to switch from sleep mode to active mode based on time slot information;
>>
>> processing circuitry operatively coupled to the second wireless transceiver and the timer, the processing circuitry arranged to switch the second

4

> wireless transceiver from the sleep mode to the active mode in response to input from the timer, the processing circuitry also arranged to monitor a first channel for the beacon during the active mode and, subsequently, to increase a channel number to a second channel and to reset the timer; and
>
> a *server* configured to receive data from the second wireless device when in proximity to the first wireless device.

D.I. 1-1 at claim 1 (emphasis added).

### B. Plaintiff's Infringement Allegations in the First Amended Complaint

In the First Amended Complaint, Plaintiff alleges that the claimed "first wireless device" limitation is a "reader decoder circuit" and that this limitation reads on a "Target Bluetooth beacon" inside a Target store. D.I. 15 at ¶¶ 11-16, 20-22, 24, 32-34, 39-41, 43-45, 48-49, 59, 62-63. Plaintiff alleges that the claimed "second wireless device" is a "personal digital key" and that this limitation reads on a Target customer's mobile phone (*e.g.*, Apple iPhone running Apple's iOS operating system) on which the customer has also installed a Target mobile app. *Id.* at ¶¶ 11-16, 18-19, 24, 27-34, 36-37, 39-41, 45, 48-49, 59, 62-63. Plaintiff further alleges that the claimed "server" is a "central server" that communicates with the two claimed wireless devices and that the claimed "server" reads on either a server maintained, owned, operated, or controlled by Target or "server(s) that are operated by Acuity Brands or its agent on behalf of Target." *Id.* at ¶¶ 16, 20, 35-38, 45, 49. In other words, the accused system is comprised of a customer's mobile phone with an app installed; servers controlled by Target; and Bluetooth beacon devices installed in Target stores.

In the First Amended Complaint, Plaintiff's only infringement allegations are that Target is liable as the inducer, and contributory infringer, of a Target customer's direct infringement, and where such customer (1) "uses" the asserted system claims (1, 7-9) of the '533 patent (Count I, D.I. 15 at ¶¶ 43-50), or (2) performs all of the steps of the asserted method claims (11, 17-19) of the '533 patent (Count II, *id.* at ¶¶ 59-64).

More specifically, in Count I regarding the asserted system claims (1, 7-9) of the '533 patent, Plaintiff alleges that a Target customer "uses" the asserted system claims when such customer has gone inside a Target store and is using his/her mobile phone on which he/she previously installed the Target mobile app:

> Target customers, using the Target App on their Bluetooth enabled mobile devices (such as mobile phones), directly infringe claims 1 and 7-9 of the '533 patent. As a non-limiting example, Target customers perform or cause to be performed all elements of the system of claim 1 when using the Target App in a Target store. The Target customer directly benefits from interaction with all elements of the claimed system, including by receiving deals, special offers, and the ability to track their location within a particular Target store. Target customers achieve these benefits by receiving the beacon from a known location within the store according to the BLE capabilities on his or her mobile device, and by sending information from the beacon to a remote server maintained by Target as described above. Target customers further benefit from the claimed sleep cycle and timers by extended battery life of their mobile device(s). Thus, the Target customer places the claimed system as a whole into service.

*Id*. at ¶ 45.

## IV. ARGUMENT

In Count I of the First Amended Complaint, and as identified above, Plaintiff's only infringement allegations for the asserted system claims of the '533 patent (claims 1, 7-9) are that Target is liable as the inducer, and contributory infringer, of a Target customer's direct infringement where such customer "uses" the asserted system claims. D.I. 15 at ¶¶ 43-50.

At the threshold, and as a matter of law, "liability for inducement [or contributory infringement] must be predicated on direct infringement." *Limelight*, 572 U.S. at 920-921; *Motorola*, 870 F.3d at 1331; D.I. 15 at ¶¶ 43-44, 46-50. Thus, Count I of the First Amended Complaint falls at the pleading stage in the absence of plausible allegations that a Target customer directly infringes by "using" the asserted system claims of the '533 patent.

Here, Plaintiff's infringement claim in Count I fails because Plaintiff does not and cannot plausibly allege that a Target customer uses the claimed system because doing so requires a

showing that the customer (a) "place[s] the claimed system *as a whole* into service", **and** (b) "obtain[s] benefit from *each and every element* of the claimed system." *Motorola*, 870 F.3d at 1329 (citing *Centillion*, 631 F.3d at 1284) (emphasis added); D.I. 15 at ¶¶ 45, 48-49.  Instead, Plaintiff concedes that the various elements of the alleged system are put into service by more than one person or entity: Target, its customer and possibly third parties responsible for operating the alleged server.  Therefore, there is no actionable direct infringement. .  This fundamental problem remains despite Plaintiff's attempt to repackage its flawed joint infringement allegations under a different name.

Plaintiff seems to recognize its problem because it generically paraphrases the standard it recited in the First Amended Complaint: Target customers "perform or cause to be performed all elements of the system of claim 1 when using the Target App in a Target store."  D.I. 15 at ¶ 45 (reproduced in Section III.B above).  However, outside of this conclusory recital, Plaintiff does not and cannot allege that a Target customer *causes* the claimed "first wireless device", which Plaintiff reads onto a Target Bluetooth beacon, to "*transmit* a beacon including a source identifier." *See* D.I. 1-1 at claim 1 (emphasis added) (reproduced in Section III.A above).  For example, Plaintiff does not and cannot allege that the accused "second wireless device" (Target customer's mobile phone on which the customer has also installed a Target mobile app) initiates this transmission by sending a request message to the Target Bluetooth beacon.  Rather, Plaintiff expressly acknowledges that Target Bluetooth beacons transmit messages regardless of whether any customer (and his/her mobile phone) is present in the store, and regardless of whether any Target customer inside the store is using the Target mobile app. D.I. 15 at ¶¶ 33-34, 49.  For at least this reason, under the Supreme Court's pleading standards and Federal Circuit precedent of *Centillion* and its progeny, Plaintiff fails to plausibly allege that Target's customer "place[s] the

claimed system as a whole into service." *Iqbal*, 556 U.S. at 678-679; *Twombly*, 550 U.S. at 557; *Centillion*, 631 F.3d at 1284-1285; *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1239-1240 (Fed. Cir. 2017).

In *Centillion*, the claimed system recited "front-end" components maintained by an end user and "back end" components maintained by a service provider. *Centillion*, 631 F.3d at 1281. Unlike the facts of this case, in *Centillion*, the defendant's customer's entry of informational queries into its "front-end" client application software *caused* the company's "back-end" components to perform the additional processing as required by the claim. *Id*. at 1281-1282, 1284 ("The customer controls the system by creating a query and transmitting it to Qwest's back-end . . . If the user did not make the request, then the back-end processing would not be put into service."), 1285 ("[I]n both modes of operation, it is the customer initiated demand for the service which causes the back-end system to generate the requisite reports.").

In *Georgetown Rail*, the claimed system again recited "front-end" components and "back end" components maintained by different entities. *Georgetown Rail*, 867 F.3d at 1234. Contrary to the facts in the instant case, the accused infringer (Holland) acted like the customers in *Centillion* in that Holland "collects and gathers data by its system platform on the front-end" and "[t]hen sends the gathered infromation to a back-end third-party company with instructions to process and analyze the information." *Id*. at 1239-1240. Indeed, Holland was found to "use" the system because the "back end" components performed the recited steps "*as a result of* Holland's front-end collection and request for processing." *Id*. (emphasis added); *see also AlexSam, Inc. v. Aetna, Inc.*, No. 3:19-cv-01025 (VAB), 2020 U.S. Dist. LEXIS 166496, *40-45 (D. Conn. Sept. 11, 2020) (granting motion to dismiss direct and divided infringement claims because plaintiff failed to plausibly allege that a single entity performed, or controlled the performance of, every element of

8

the claimed system); *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 U.S. Dist. LEXIS 219072, *6-10 (E.D. Tex. Dec. 10, 2018) (granting motion to dismiss direct and indirect infringement claims because plaintiff failed to plausibly allege "use" of the claimed system by a single entity).

Here, Plaintiff does not and cannot plausibly allege that a Target customer *causes* a Target Bluetooth beacon to "*transmit* a beacon including a source identifier" and, in fact, expressly acknowledges otherwise.  D.I. 15 at ¶¶ 33-34, 45, 48-49.  Thus, the allegations in this case do not even permit the Court to infer the possibility, let alone the requisite "facial plausibility", of Target's liability for indirect infringement of the asserted system claims of the '533 patent.  *Iqbal*, 556 U.S. at 678-679; *Gonzalez*, 577 F.3d at 603.  Accordingly, Count I of the First Amended Complaint fails to state a claim and should be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion and dismiss Count I of Plaintiff's First Amended Complaint for failure to state a claim.

Dated:  January 18, 2021            Respectfully submitted,

*/s/ Gilbert A. Greene*
Gilbert A. Greene
**DUANE MORRIS LLP**
Las Cimas IV
900 S. Capital of Texas Highway, Suite 300
Austin, TX 78746
Tel.: 512-277-2246
Fax: 512-597-0703
Email: BGreene@duanemorris.com

Matthew S. Yungwirth (admitted *pro hac vice*)
**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 2000
Atlanta, GA  30309-3929
Telephone:  404-253-6900
Email:  msyungwirth@duanemorris.com

Christopher J. Tyson (admitted *pro hac vice*)
**DUANE MORRIS LLP**
505 9th Street N.W., Suite 1000
Washington, DC 20004-2166
Tel:  202.776.5213
Email: cjtyson@duanemorris.com

*Attorney for Defendant Target Corporation*

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served upon all counsel of record via ECF and electronic mail on this the 18th day of January, 2021.

> */s/ Gilbert A. Greene*
> Gilbert A. Greene