UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

|  |  |
|---|---|
| PROXENSE, LLC | ) |
| Plaintiff, | ) Civil Action No.: 6:20-cv-879 (ADA) |
| v. | ) |
| TARGET CORPORATION | ) |
| Defendant. | ) |

**PLAINTIFF PROXENSE'S OPPOSITION TO TARGET'S MOTION TO
DISMISS COUNT I OF THE FIRST AMENDED COMPLAINT**

I.     INTRODUCTION

Defendant Target Corporation ("Target") moves to dismiss Count I of Plaintiff Proxense's ("Proxense") First Amended Complaint ("FAC"; Dkt. 15). Count I alleges infringement of system claims 1 and 7-9 ("System Claims") of US Patent No. 10,445,533. Proxense pleads that a Target customer directly infringes the System Claims by placing every element of the claimed system *as a whole* into service through their use of the Target App on their personal mobile device (Dkt. 15; par. 45).

Target's customers, at the suggestion and with the encouragement of Target, download and use the Target App (Dkt. 15; par. 27). Target customers "use" the entire claimed system as that term is defined by the applicable caselaw. Target customers initiate the use of the entire claimed system by causing their mobile devices to search for certain signals from a beacon in a Target store. Absent that search, the claimed system is dormant and waiting for the Target customer's control. Target's only argument is that because the Target customer does not turn the

1

beacon on, the Target customer does not control the entire system. This argument fails because the Target customer sufficiently controls the entire system when the Target customer turns on the Target App and initiates operation of the system as a whole.

## II. APPLICABLE LEGAL STANDARD

### A. STANDARD FOR A MOTION TO DISMISS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not met unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To provide opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests," every pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

To survive a Motion to Dismiss filed pursuant to Federal Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Twombly*, 550 U.S. at 563 n.8.

A court addressing a motion under Federal Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). Furthermore, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

B. DIRECT INFRINGEMENT OF SYSTEM CLAIMS

Target correctly points out that claims of indirect infringement must be supported by an underlying act of direct infringement. Target also correctly identifies that to establish an infringing "use" of a system, the patentee must prove that the direct infringer exercises "control" over the system, and obtains a "benefit" from each and every element of the claimed system. The cases cited by Target provide needed context for how these terms are applied in practice.

Contrary to Target's arguments, there is no requirement that the infringer of a system claim **directly control** all components of the claimed system. The Federal Circuit held in *Intellectual Ventures I LLC v. Motorola Mobility LLC,* 870 F.3d 1320 (Fed. Cir. 2017) that "to use a system, a person must control (even if indirectly) and benefit from each claimed component." *Id.* at 1329. In interpreting the *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) case, the *IV* Court noted that "customers of the accused infringer, by exchanging messages over the allegedly infringing system, controlled and benefitted from the claim required relay equipment at issue, which was part of what made the message exchanges work." *Intellectual Ventures,* at 1329. While the relays were not in the direct control of the customers, those customers nevertheless indirectly controlled the relays in putting the whole system into

service. Thus, *IV* ultimately concludes that "the direct or indirect control required 'is the ability to place the system as a whole into service.'" *Id.*

The *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279 (Fed. Cir. 2011) case is also instructive. In *Centillion* the defendant argued that because certain back-end processing equipment was not provided to the customer for the customer to control, the customer could not "use" the back-end processing equipment. *Id.* at 1284-85.[1] The Court held that for each mode of operation under consideration "it is the customer initiated demand for the service which causes the back-end system to generate the requisite reports. This is 'use' because, but for the customer's actions, the entire system would never have been put into service. This is sufficient control over the system under NTP, and the customer clearly benefits from this function." *Id.* at 1285.

While Target cites to these same cases, it conveniently omits all mention of these holdings' reliance on "indirect" control. As discussed below, and specifically with respect to those claim elements that Target takes issue with, are all adequately plead under a proper interpretation of the caselaw with respect to "control" for a finding of direct infringement. Target customers directly or indirectly control the claimed system by initiating a search for the beacon. Without that search the system is dormant. The Target Customer controls the system as they put every claimed element of that system into use, and benefit from each claim element.

---

[1] "Qwest argues that its customers do not 'use' the system because they do not control the back-end processing. It argues that Qwest performs the back-end processing and provides the result—not the processing itself—to the customer. It argues that the customer then chooses autonomously whether to download this information and whether to install and use the Qwest software. It argues that under *Cross Medical*, a customer could only be liable for use of the system if Qwest actually provided the back-end processing hardware and software to the customer so that the customer could control it."

4

III.   ARGUMENT

As noted by Target, the asserted System Claims have three distinct system components. Target aptly summarizes these three elements – "the accused system is comprised of a user's mobile phone with an app installed; servers controlled by Target; and beacon devices installed in Target stores." (Dkt. 19; p. 5). While Proxense disputes the definition of "controlled" within the meaning of the caselaw in this context, Target was apparently able to identify the elements of the system identified by Proxense in the FAC that form the basis of the infringement allegations.

Target's only argument is that Target customers do not put the claimed system into service because the Target customers do not control the "first wireless device." Although Target's premise is unsupported in the law, Target nevertheless turns to snippets of caselaw to argue that the customer must directly control each and every aspect of a system in order to directly infringe a patent claim. This is not the case. While Proxense does not allege that the Target customer directly causes the first wireless device to *transmit* a beacon, Proxense alleges that the Target customer directly places the claimed system, as a whole, into service.[2]

Target does not apparently dispute that the claimed system does not perform any function without initiation by the Target customer. As plead by Proxense – "Once a Target customer has installed the Target App (which includes associated software) and activates Bluetooth on their device, the Target customer's device interacts with the Target Bluetooth beacons without further action by the Target customer." (Dkt. 15, par. 40). The system as a whole is dormant until the Target customer installs the Target App, enables the Bluetooth functionality of their mobile device, and brings that device into the store. (Dkt. 15, par. 43). These are the actions that enable the function of the whole system. Upon initiation, the Target customer's mobile device actively

---

[2] While Target seems to suggest that Proxense's pleading is deficient in multiple ways, the only deficiency noted and argued is the alleged lack of direct control over the "first wireless device." (Dkt. 19, pp. 7-9)

5

scans for advertising and/or data channels, and initiates various Bluetooth protocols when the beacon is detected. (Dkt. 15, par. 45). This detection puts the claimed system into service. While the Target customer's mobile device does not directly cause the beacon to be transmitted, nothing happens until the Target customer initiates the system by searching for the beacon signal. Once the beacon is detected, the Target App on the Target customer's mobile device uses the information received to access information and receive benefits. The claimed system is "put into service" by the Target customer; in this, the Target customer indirectly controls the "first wireless device."

As held by the Federal Circuit in *IV*, "the direct or indirect control required 'is the ability to place the system as a whole into service.'" *IV*, 870 F.3d at 1329. The system as whole, in this instance, and as plead by Proxense, is put into service by the Target customer enabling the Target App and Bluetooth features and the initiation of a search for a beacon. This initiation by the Target customer places the claimed system into operation by detecting the passive beacon and processing the information received by the beacon. As noted by the Federal Circuit in *Centillion*, "For example, in *NTP*, the end user was 'using' every element of the system by transmitting a message. It did not matter that the user did not have physical control over the relays, the user made them work for their patented purpose, and thus 'used' every element of the system by putting every element collectively into service." *Centillion*, 631 F.3d at 1284. In the present case, the Target customer makes the system work for its patented purpose by initiating the search for the beacon. There is no meaningful distinction between sending a message and initiating the search.

The facts of the *Centillion* case itself compel the same conclusion. There were two systems discussed in that case. The "on-demand operation" is relevant to this case:

> The customer controls the system by creating a query and transmitting it to Qwest's back-end. The customer controls the system on a one request/one response basis. This query causes the back-end processing to act for its intended purpose to run a query and return a result. The user may then download the result and perform additional processing as required by the claim. If the user did not make the request, then the back-end processing would not be put into service. By causing the system as a whole to perform this processing and obtaining the benefit of the result, the customer has "used" the system under § 271(a). It makes no difference that the back-end processing is physically possessed by Qwest.

*Centillion*, 631 F.3d at 1285.[3] Similarly, the initiation of a search for a beacon by the Target customer enables the facilities directly controlled by Target to perform the service for which the system was designed. The initiation of the search by the Target customer causes the claimed second wireless device to detect the beacon and decode the information contained in the beacon and use that information to contact the claimed server. The back-end server of *Centillion* is – like the beacon in the present claims – a passive element that serves no purpose whatsoever until such time as the Target customer initiates a search for that beacon. When the search is initiated by the Target customer the beacon's purpose in the system is unlocked, and the system as a whole implements the purpose for which the beacon exists. It is of no moment that the Target customer does not cause the transmission of the beacon itself.

Proxense adequately pleads that "the Target customer places the claimed system as a whole into service." (Dkt. 15, par. 45). The FAC provides detailed allegations about how the Target customer places the system as a whole into service. (Dkt. 15, pars. 32-34, 39). Once the Target customer enables the Target App on his or her mobile device, "Bluetooth devices, such as Mobile devices on which the Target App is installed and Target Bluetooth beacons, connect by scanning successive advertising and/or data channels. The Target App is configured to interact

---

[3] The other cases cited by Target do not provide guidance relevant to the situation presented by this case.

with devices according to various Bluetooth Low Energy … protocols. In particular, Bluetooth devices scan successive different advertising channels in successive scan windows." (Dkt. 15, par. 39). These scans, initiated by the Target customer's mobile device, enable and initiate the operation of the claimed system. Under these circumstances the Target customer "uses" all elements of the claimed invention.

IV.     CONCLUSION

The FAC pleads direct infringement by a Target customer. The FAC adequately pleads that the Target customer uses all elements of the System Claims when the Target customer initiates the system by searching for an active beacon in a Target Store. Target's Motion to Dismiss should be accordingly be denied. In the alternative, should the Court determine that the allegations of infringement are insufficient, Proxense seeks leave to file an additional Amended Complaint.

Date: February 1, 2021                           Respectfully submitted,

                                                 */s/ Robert Christopher Bunt*
                                                 Richard T. McCaulley, Jr.
                                                 Haley Guiliano, LLP
                                                 111 North Market Street, Suite 900
                                                 San Jose, CA 95113
                                                 (669) 213-1071
                                                 E-mail: richard.mccaulley@hglaw.com

                                                 Robert Christopher Bunt
                                                 State Bar No. 00787165
                                                 Charles Ainsworth
                                                 State Bar No. 00783521
                                                 PARKER, BUNT & AINSWORTH, P.C.
                                                 100 E. Ferguson, Suite 418
                                                 Tyler, TX 75702
                                                 903/531-3535
                                                 E-mail: rcbunt@pbatyler.com
                                                 E-mail: charley@pbatyler.com

                                                 *COUNSEL for PLAINTIFF*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 1st day of February, 2021, with a copy of this document via the Court's CM/ECF system.

>*/s/ Robert Christopher Bunt*
>ROBERT CHRISTOPHER BUNT