IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PROXENSE, LLC<br><br>                Plaintiff,<br><br>vs.<br><br>TARGET CORPORATION<br><br>                Defendant. | Case No. 6:20-cv-879-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT TARGET CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COUNT I OF PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant Target Corporation ("Target") submits this Reply in support of its Motion to Dismiss Count I of Plaintiff Proxense, LLC's First Amended Complaint (the "Motion"). D.I. 19.

## I.   INTRODUCTION

Proxense's Opposition (D.I. 20) to Target's Motion is incorrect on the law of direct infringement based on "use" of a claimed system, and on the law's application to the undisputed facts in this case. Indeed, Proxense's Opposition confirms that there is **no dispute** that:

- "a **first wireless device**...including: a first wireless transceiver configured to transmit a beacon including a source identifier" **is** an element of the asserted system claims (1, 7-9) of the '533 Patent;

- Target's customer does **not** exercise physical control, or physically possess, the accused "**first wireless device**" (Target's Bluetooth beacon device); and

- Target's customer (and such customer's mobile device (the accused "**second wireless device**")) does **not** cause the accused Target Bluetooth beacon device to "transmit a beacon including a source identifier", as the mobile device only listens for communications from the beacon device.

Applying binding Federal Circuit precedent to the facts of this case, including those conceded above, it is undisputed that Target's customer does not directly control, nor indirectly control, every element of the asserted system claims. *Intellectual Ventures I LLC v. Motorola*

*Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017); *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1239-1240 (Fed. Cir. 2017); *Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.*, 631 F.3d 1279, 1286 (Fed. Cir. 2011). Accordingly, as Count I of the First Amended Complaint is premised entirely on implausible allegations that Target's customer "uses" the asserted system claims, Proxense has failed to state a claim and Count I should be dismissed.

## II.     ARGUMENT

The fatal flaw of Count I is Proxense's misunderstanding of the law of direct infringement based on "use" of a claimed system. Indeed, contrary to Proxense's characterization in its Opposition, a patentee must demonstrate that an accused direct infringer—here Target's customer—controls (directly or indirectly), and benefits from, every element of the asserted system claims:

> *Centillion* and *NTP* held that to 'use' something is to put it into service, which means to control and benefit from it. And *Centillion* explicitly added that, to use a claimed system, what must be 'used' is each element. *Centillion*, 631 F.3d at 1284 ('We agree that direct infringement by 'use' of a system claim 'requires a party . . . to use each and every...element of a claim [system].' In order to 'put the system into service,' the end user must be using all portions of the claimed invention.' . . . From those two propositions, it follows that, to use a system, a person must control (even if indirectly) and benefit from each claimed component.

*IV*, 870 F.3d at 1329 (*quoting Centillion*, 631 F.3d at 1286). The Federal Circuit further emphasized this requirement in the *IV* case when it noted that "*NTP* and *Centillion* both found control of and benefit from every element on their particular facts." *IV*, 870 F.3d at 1329; *citing Centillion*, 631 F.3d at 1285-1286; *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005).[1]

---

[1] Moreover, in *NTP*, the Federal Circuit explicitly noted that "RIM has not appealed the determination that the customers are directly putting into action the system that is the subject of NTP's claim limitations. RIM only appeals whether any such use occurs within the United States, in light of the location of the Relay within Canada." 418 F.3d at 1317 n.13; *see also id.* at 1314.

Proxense fails to satisfy this standard, and in fact, explicitly concedes that it has not alleged that a single person or entity "control[s] (even if indirectly) . . . each claimed component", despite that being a necessary element of a claim for direct infringement by "use" of a system. To excuse this failure, Proxense argues that the Target customer "controls" the claimed system "as a whole" by simply "mak[ing] the system work for its patented purpose":

> While Proxense does not allege that the Target customer directly causes the first wireless device to *transmit* a beacon, Proxense alleges that the Target customer directly places the claimed system, as a whole, into service . . . While the Target customer's mobile device does not directly cause the beacon to be transmitted, nothing happens until the Target customer initiates the system by searching for the beacon signal . . . In the present case, the Target customer makes the system work for its patented purpose by initiating the search for the beacon. There is no meaningful distinction between sending a message and initiating the search.

D.I. 20 at 5-6 (emphasis in original). Proxense is incorrect in its interpretation of the law and its application to the facts here (including the importance of the language of the claims-at-issue). Proxense has not and cannot allege that the Target customer controls the first wireless device (Target's Bluetooth beacon device) because the customer (1) does not directly control (*i.e.*, exercise physical control/possession over) that device, nor (2) indirectly control (*i.e.*, **cause** to be put into service to perform its claimed function) that device, which "transmit[s] beacon[s] including a source identifier" regardless of what the customer does. Rather, Proxense concedes that the Target customer's mobile device only listens for communications from Target's beacon device that transmits automatically and continuously. D.I. 20 at pp. 5-8; Motion at pp. 7-9.

Proxense mischaracterizes the *IV* case as somehow eliminating the "control of . . . every element" prong of the legal standard when, in fact, the Federal Circuit reiterated that requirement while also resolving a different argument over the "benefit from every element" requirement of the standard. Indeed, in the *IV* case, the defendant (Motorola) did not dispute the plaintiff's showing of the "control of . . . every element" prong, which is the disputed issue in our case. In

3

*IV*, Motorola did not contest that the customer indirectly controlled the Multimedia Messaging Services Center ("MMSC") because a delivery confirmation message sent from the customer's mobile device caused the MMSC to "generate a delivery report that indicates a delivery event and a time of that delivery event" as claimed in the asserted system claims. *IV*, 870 F.3d at 1323, 1328-1330.  Instead, Motorola argued, and the Federal Circuit agreed, that the plaintiff also had to show that the accused direct infringer benefited from the MMSC's "generat[ing] a delivery report that indicates a delivery event and a time of that delivery event", which the plaintiff did not do. *IV*, 870 F.3d at 1329-1330.  Thus, the plaintiff's incorrect argument in the *IV* case—that no "benefit from every element" requirement exists in the law—is a horse of a slightly different color than Proxense's incorrect argument here—that no "control of . . . every element" requirement exists in the law—but Proxense's argument should be similarly rejected.  *Id*.; D.I. 20 at 5-6.

Moreover, Proxense's reliance on the *Centillion* case is equally misplaced because the accused direct infringer in that case **did** cause the claimed system components to act; which is a different scenario than in the present case.  In *Centillion*, the Federal Circuit found that, in the specific situation when a Qwest customer "creat[ed] a query and transmitt[ed] it to Qwest's back-end", the customer **did** "use" the asserted system claims because, although the customer did not "directly" control (*i.e.*, exercise physical control/possession over) Qwest's back-end components, the customer "indirectly" controlled such components because the customer's creation and sending of the query to such back-end components "**cause[d]**" the claimed: (1) "storage means [to] stor[e] transaction records", (2) "data processing means [to] generat[e] summary reports as specified by a user from the transaction records", and (3) "transferring means [to] transfer[] the transaction records and summary reports to [the customer]."  *Centillion*, 631 F.3d at 1281, 1284-1285 (emphasis added).  Notably, the Federal Circuit found that, "if the user did not make the request

4

[to Qwest's back-end components], then the back-end processing would not" perform the claimed steps. *Id*. Thus, although Proxense argues that *Centillion*'s "'on-demand operation" is relevant to this case", the facts here are distinguishable because Target's customer indisputably does not, and cannot, **cause** Target's Bluetooth beacon device to transmit beacons. D.I. 20 at pp. 6-7; Motion at pp. 7-8. Rather, as Proxense concedes, Target's Bluetooth beacon device transmits beacons regardless of whether the customer initiates a search for the beacon. D.I. 20 at pp. 5-8; Motion at pp. 7-8.

Furthermore, in *Georgetown Rail*, the Federal Circuit found that the accused direct infringer (Holland) "used" the asserted system claims because, although Holland did not physically control or possess the accused back end "at least one processor", Holland's "send[ing of] the gathered information to a back-end third-party company with instructions to process and analyze the information" caused the "at least one processor" to perform its claimed functions of "analyzing the plurality of images and determining one or more physical characteristics of the said portion of the railroad track bed . . .". 867 F.3d at 1234, 1239-1240; *see also* Motion at p. 8. The present case is again distinguishable from *Georgetown Rail* because the Target customer's actions do not cause the alleged first wireless device (Target's Bluetooth beacon device) to do anything as the Target customer's mobile device only listens for communications from the beacon device that transmits automatically and continuously. *Id*.

Consistent with this precedent which is binding but not pertinent under the facts of this case, Proxense was required to allege (and later prove) that the Target customer controls all elements of the asserted system of claims 1 and 7-9, including the first wireless device that transmits beacons. In other words, Proxense must plausibly allege, in relevant part, that Target's customer's actions at least indirectly control the accused first wireless device (*i.e.*, the Target

5

Bluetooth beacon) by causing it "to *transmit* a beacon including a source identifier." D.I. 19 at pp. 4-5 (reproducing claim 1 of the '533 Patent); *IV*, 870 F.3d at 1328-1329; *Georgetown Rail*, 867 F.3d at 1239-1240; *Centillion*, 631 F.3d at 1284-1287.  There is no dispute that Proxense does not, and cannot, make such allegations in Count I.  Indeed, Proxense acknowledges that any interactions between Target's customer's mobile device and the Target Bluetooth beacon device are strictly one-way: the mobile device only listens for communications from the beacon device and, therefore **does not** cause the beacon device "to *transmit* a beacon including a source identifier" as **required** by the claims.  D.I. 20 at pp. 5-8; Motion at pp. 7-9.

Finally, Proxense cannot escape its obligation to allege "control of . . . every element" by rewriting or downplaying the importance of the actual claim language in the asserted system claims as it tries to do:

> The system as whole, in this instance, and as plead by Proxense, is put into service by the Target customer enabling the Target App and Bluetooth features and the initiation of a search for a beacon. This initiation by the Target customer places the claimed system into operation by detecting the passive beacon and processing the information received by the beacon . . . There is no meaningful distinction between sending a message and initiating the search . . . [T]he initiation of a search for a beacon by the Target customer enables the facilities directly controlled by Target to perform the service for which the system was designed. The initiation of the search by the Target customer causes the claimed second wireless device to detect the beacon and decode the information contained in the beacon and use that information to contact the claimed server . . . It is of no moment that the Target customer does not cause the transmission of the beacon itself.

D.I. 20 at pp. 6-7.  Noticeably absent from Proxense's argument is any reference to the limitation: "a first wireless transceiver configured to transmit a beacon including a source identifier . . .".  D.I. 1-1 ('533 Patent) at claim 1 (reproduced at Motion at pp. 4-5).  There simply is no basis for Proxense to allege or argue that the Target customer controls the first wireless device or causes it to transmit a beacon that is received by the customer's mobile device.  Under this factual scenario, the Target customer is not a direct infringer based on use of a claimed system as it does not control

6

a required element of the system (even indirectly).  *IV*, 870 F.3d at 1323, 1328-1329; *Georgetown Rail*, 867 F.3d at 1234, 1239-1240; *Centillion*, 631 F.3d at 1281, 1284-1287.  Proxense's inability to fit its square piece into the round hole based on how it chose to draft its claims does not entitle it to rewrite the claims to survive this motion to dismiss.

### III.     CONCLUSION

For the foregoing reasons and the reasons set forth in its Motion, Target respectfully requests that the Court grant its Motion and dismiss Count I of the First Amended Complaint for failure to state a claim.

Dated:  February 8, 2021

Respectfully submitted,

*/s/ Gilbert A. Greene*
Gilbert A. Greene
**DUANE MORRIS LLP**
Las Cimas IV
900 S. Capital of Texas Highway, Suite 300
Austin, TX 78746
Tel.: 512-277-2246
Fax: 512-597-0703
Email: BGreene@duanemorris.com

Matthew S. Yungwirth (admitted *pro hac vice*)
**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 2000
Atlanta, GA  30309-3929
Telephone:  404-253-6900
Email:  msyungwirth@duanemorris.com

Christopher J. Tyson (admitted *pro hac vice*)
**DUANE MORRIS LLP**
505 9th Street N.W., Suite 1000
Washington, DC 20004-2166
Tel:  202.776.5213
Email: cjtyson@duanemorris.com

*Attorney for Defendant Target Corporation*

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served upon all counsel of record via ECF and electronic mail on this the 8th day of February, 2021.

*/s/ Gilbert A. Greene*
Gilbert A. Greene
