# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| PROXENSE, LLC | ) | Civil Action No.: 6:20-cv-879 (ADA) |
| | ) | |
|            Plaintiff, | ) | **PLAINTIFF'S OPENING CLAIM** |
| | ) | **CONSTRUCTION BRIEF** |
| v. | ) | |
| | ) | |
| TARGET CORPORATION | ) | |
| | ) | |
|            Defendant. | ) | |

812277_1

TABLE OF CONTENTS

I.      Introduction ................................................................................................................ 1

  A.     Proxense's Breakthrough and Patented Positioning Technology ....................... 1

      1.     The '533 Patent Addresses Crowded Airwaves & Prolonged Battery Life ................. 2

      2.     Proxense Used Coordinated Timing for Devices to Give Them Their Time to Talk ... 2

      3.     Proxense's Technology Used a Timed Wake/Sleep Cycle to Preserve Battery Life ... 4

II.     Procedural background ................................................................................................ 5

III.    Authority ...................................................................................................................... 6

IV.     Argument ...................................................................................................................... 7

  A.     Time Slot Information .......................................................................................... 8

  B.     Claims 1, 7, 11, and 17 are Not Indefinite ........................................................ 12

      1.     A POSITA Would Not Struggle with the Scope of Claims 1, 7, 11, and 17 as Issued.
             13

      2.     Neither the Specification nor the Claims Require the Second Wireless Device to

  Communicate with the Server through the First Wireless Device. .............................................. 15

      3.     Reading Preferred Embodiments into the Claims is Improper ................................... 16

V.      Conclusion ................................................................................................................. 16

TABLE OF AUTHORITIES

**Statutes**

35 U.S.C. §112 ¶ 2 ........................................................................................................... 6

**Cases**

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334 (Fed. Cir. 2016) ......................... 13

812277_1

Plaintiff's Opening Claim
Construction Brief

*Barakan Wireless IP Holdings, L.P. v. Sprint Communs. Co., L.P.*, 2020 U.S. Dist. LEXIS
    198124, 71-72; 2020 WL 6271162 (E.D. Tex. Oct. 2020) .................................................. 13, 16

*BASF Corp. v. Johnson Matthey, Inc.,* 875 F.3d 1360 (Fed. Cir. 2017) ......................................... 7

*Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374 (Fed. Cir. 2015) ............................... 6, 7

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed.
    Cir. 2001) ................................................................................................................ 11, 14

*EPOS Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338 (Fed. Cir. 2014) ................................... 6

*GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304 (Fed. Cir. 2014) ................................... 9

*Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343 (Fed. Cir. 2016) ................. 6

*Match Grp., LLC v. Bumble Trading Inc.*, No. 6:18-CV-00080-ADA, 2018 U.S. Dist. LEXIS
    235353, at *19 (W.D. Tex. Dec. 18, 2018) ................................................................. 13

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014) ................................................ 7

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ................................................... 6, 9, 13

iii

Plaintiff's Opening Claim
Construction Brief

## I.    Introduction

Plaintiff Proxense, LLP's ("Proxense") '533 Patent[1] is directed to systems and methods for a power-efficient solution enabling indoor positioning and wayfinding. Its claims use words commonly used in the field to describe the metes and bounds of the patented invention. Defendant Target Corporation ("Target") seeks to complicate the claims with artificially narrow constructions and misplaced allegations of indefiniteness. The claims are not indefinite. And, there is no need for the Court to construe the claims beyond how the Patent Office approved them.

Target appears to offer a predictable claim construction posture: propose unnecessarily narrowing limitations, and attempt to advance a false characterization of the '533 Patent to achieve an indefiniteness ruling. Contrary to Target's position, it is the claims that set the scope of the invention, not extrinsic expert opinion or limiting embodiments from the specification. All of the disputed terms and phrases are clear as issued, with plain and ordinary meanings quickly evident to one of ordinary skill in the art. The claims use plain English words (*e.g.,* , "time slot information," "server") readily understandable to a person of ordinary skill in the art ("POSITA") and that a jury will be able to understand. For these reasons, no construction is necessary and the claims provide a POSITA with reasonable certainty as to their scope.

### A.    Proxense's Breakthrough and Patented Positioning Technology

In 2006, when the '533 Patent was applied for, Palm and Handspring devices still roamed the Earth, although they were increasingly encountering a newly evolved, color-screened, cellular-and-data-enabled Blackberry. The Blackberry pager had already fulfilled its evolutionary purpose. Bluetooth was on the scene, but was still developing a workable 2.0 specification.

---

[1] United States Patent Number 10,455,533 (the "'533 Patent").

812277_1

Plaintiff's Opening Claim
Construction Brief

Today, nearly everyone has a supercomputer in the form of a smart phone in their pocket. Retailers are all too anxious to guide their customers, and their pocketbooks, through stores (not to mention developing a beachhead to register their customers' data and habits onto remote servers through proprietary apps). Guiding customers through the store is where Proxense's technology comes in. Retailers, like Target, put their apps on customers' smart phones and use beacons, installed, *e.g.,* , in light fixtures throughout their stores to guide a customer's experience to what the customer is looking for, or maybe a "good deal." Smart phones are a suitable platform for this technology because of their multiple communication protocols and their ability to manage beaconing call and response in a relatively non-power intensive manner. Proxense's technology helped make this happen.

### 1.    *The '533 Patent Addresses Crowded Airwaves & Prolonged Battery Life*

Proxense initially developed its patented technology for the casino gaming industry. To ensure a secure and entertaining environment, Casinos needed a way to track their inventories (*e.g.,* , playing chips and money) and their guests around expansive indoor spaces. Proxense's solution, as described through various embodiments in the '533 Patent, uses a fixed location reader decoder circuit ("RDC"), or multiple RDCs, to interact with a battery-efficient personal digital key ("PDK") carried by a user of the system, and a server to receive and provide information when needed. With lots of inventory and guests moving around a casino, it would be important that whenever possible the system rely on extremely low power components. Also, with so many signals being passed around, the system had to avoid wireless collisions and crosstalk.

### 2.    *Proxense Used Coordinated Timing for Devices to Give Them Their Time to Talk*

Casinos' desire to simultaneously track and communicate with many individual guests required placement of many transmitters distributed throughout their gaming floors. This,

Plaintiff's Opening Claim
Construction Brief

however, entailed many different signals sent to different guest devices potentially at the same time.  All this wireless traffic presented a significant risk that these signals would interfere with one another.  That is, with so many devices trying to communicate with each other, it becomes very difficult to track which device is communicating.  Accurate data transfer at a level that allows a personalized experience for the device holder in this situation would be difficult if not impossible.

Proxense's solution was to allot different specified periods of time in its system for communication with each different device.  Each device in the system was slotted into pre-set communication windows that did not overlap with the communication windows of any other device, as shown in Fig. 29 of the '533 Patent.



Figure 29

As shown in Figure 29 of the '533 Patent, each PDK is assigned a superframe SF for its communications, broken into timeslots (the small rectangles) allotted to a particular PDK for sending or receiving data.  See Declaration of Richard McCaulley (the "McCaulley Decl."), Exhibit 1 at Col. 29:13-18.  This gave each device its turn to talk, preventing devices from talking over – and, thus, interfering with – each other.

### 3.  *Proxense's Technology Used a Timed Wake/Sleep Cycle to Preserve Battery Life*

Proxense needed to provide a durable wireless communication device that did not require, *e.g.,* , a large battery or frequent recharging.  Early localized communication systems, such as Bluetooth, were notorious for their excessive power consumption.  These early Bluetooth solutions kept their radio frequency (RF) transceivers in an on state to facilitate scanning for connections, which resulted in rapid battery drain.  Frequent battery replacement or recharging was a hassle that casinos could not bear.



Figure 5

Proxense's solution was elegant.  A low powered PDK receives a beacon signal from a fixture-based RDC that would put the PDK in contact with a server.  To maximize its battery life, the PDK would "sleep" by default, *i.e.*, maintain the transceiver of wireless RF MAC and PHY device 82 in Fig. 5 of the '533 Patent in a low-power state so that no transmission or reception occurs.  Then, the transceiver will "wake up" on a set timed schedule to look for a signal on a particular channel from an RDC.  If a signal wasn't available, the PDK would increase its channel number and look again for the beacon signal.  After the PDK either found a compatible beacon signal or heard nothing, it would reset its timer and return to sleep.  The generally exemplary process is depicted in Fig. 26 of the '533 Patent.

812277_1



Figure 26

An example of a wireless device in Proxense's system is a PDK.  The '533 Patent offers a broad description for a PDK: "a portable wireless device that may be conveniently carried by an individual to facilitate wireless tracking and/or allow the individual to wirelessly access various applications, assets, and/or services."  See McCaulley Decl., Exhibit 1 at Col. 6:30-47.  The user's PDK may be any wireless device that may be worn or carried by a user, including a cellular phone.  *Id.*  The exemplary PDK is contemplated as a multi-functional device, capable of robust communication.  See McCaulley Decl., Exhibit 1 at Col. 9:24-31 ("However, in one or more embodiments, the PDK 80 may be capable of communicating according to one or more different wireless protocols.").

## II.   Procedural background

Proxense filed this lawsuit on September, 22, 2020.  Following a motion to dismiss from Target, Proxense filed an amended complaint (Docket No. 15) on December 14, 2020.  Target also moved to dismiss Proxense's amended complaint; Proxense opposes the motion and has briefed its positions.  The Court has not yet ruled on the motion.  Pursuant to the Court's February 16, 2021 Scheduling Order, a Markman Hearing is scheduled for August 2, 2021 and fact discovery opens the next day.  Trial in this case is presently set to begin on May 2, 2022.

812277_1

Plaintiff's Opening Claim
Construction Brief

III.   <u>Authority</u>

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citation omitted). "Absent lexicography or disavowal, we do not depart from the plain meaning of the claims." *Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016).  "To act as a lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' and 'clearly express an intent to redefine the term.'" *Id.* (citation omitted).  "While such disavowal can occur either explicitly or implicitly, it must be clear and unmistakable." *Id.*  "[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

The specification is the "single best guide to the meaning of a disputed term." *Id.* at 1315. While Courts may rely on extrinsic evidence, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Id.* at 1317 (citation omitted). Be that as it may, it remains improper to import preferred embodiments from the specification into the claims where the claims have a plain meaning.  *EPOS Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1344 (Fed. Cir. 2014)(finding that the preferred embodiment should not limit a claim term).

"A patent must 'conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention.'"  *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015) (quoting 35 U.S.C. §112 ¶ 2).  "[T]he Supreme Court held that '[t]o determine the proper office of the definiteness command, . . . we read § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with

6

reasonable certainty.'" *Id.*, at 1378 (Fed. Cir. 2015) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014)).  A challenger has the burden of proving indefiniteness by clear and convincing evidence. *BASF Corp. v. Johnson Matthey, Inc.,* 875 F.3d 1360, 1365 (Fed. Cir. 2017).

## IV.  Argument

The disputed claim terms are found in independent claims 1 (a system) and 11 (a method), and their respective dependent claims 7 and 17.  The claims are reproduced here, for convenience.  The disputed terms are italicized and underlined.

> 1. A system comprising:
> a first wireless device having a known physical location, the first wireless device including;
> a first wireless transceiver configured to transmit a beacon including a source identifier, the source identifier indicating a source of the beacon;
> a second wireless device including:
> a second wireless transceiver having an active mode in which power is consumed, and a sleep mode in which power is conserved;
> a timer operatively coupled to the second wireless transceiver used to indicate when to switch from sleep mode to active mode based on *time slot information*;
> processing circuitry operatively coupled to the second wireless transceiver and the timer, the processing circuitry arranged to switch the second wireless transceiver from the sleep mode to the active mode in response to input from the timer, the processing circuitry also arranged to monitor a first channel for the beacon during the active mode and, subsequently, to increase a channel number to a second channel and to reset the timer; and
> *a server configured to receive data from the second wireless device when in proximity to the first wireless device*.
>
> 7. The system of claim 1*, further the server is configured to gather information from the second wireless device*.
>
> 11. A method comprising:
> switching a wireless transceiver from a sleep mode in which power is conserved to an active mode in which power is consumed

responsive to an expiration of a timer, the timer indicating when to switch from sleep mode to active mode based on *time slot information*,

monitoring a first channel for a beacon during the active mode, wherein the beacon includes a source identifier, the source identifier indicating a source of the beacon, the source of the beacon having a known physical location;

increasing a channel number to a second channel;

subsequent to increasing the channel number to the second channel, resetting the timer;

receiving, from a first wireless device, the beacon including the source identifier, the source identifier indicating the source of the beacon; and

*sending data to a server, when in proximity to the first wireless device.*

17. The method of claim 11, wherein *the server is configured to gather information from a second wireless device*, the second wireless device including the wireless transceiver.

The disputed claim terms and the parties' respective positions are reproduced below:

## A.   Time Slot Information

| Claim Language (terms at issue in italics and underlined) | Proxense's Position | Target's Position |
| --- | --- | --- |
| **[1.d]** a timer operatively coupled to the second wireless transceiver used to indicate when to switch from sleep mode to active mode based on *time slot information*; | No construction is necessary; plain and ordinary meaning | "the predetermined period of time between the start of two successive beacons from the first wireless transceiver" |
| **[11.a]** switching a wireless transceiver from a sleep mode in which power is conserved to an active mode in which power is consumed responsive to an expiration of a timer, the timer indicating when to switch from sleep mode to active mode based on *time slot information*, | No construction is necessary; plain and ordinary meaning | "the predetermined period of time between the start of two successive beacons from the first wireless transceiver" |

8

Plaintiff's Opening Claim
Construction Brief

There is no need or legal basis to construe "time slot information" beyond its plain and ordinary meaning. It appears that Target searched the '533 Patent's specification and file history but did not find the definition it wants to avoid infringement. So, Target departed from the '533 Patent to find something more suitable in extrinsic evidence. Unfortunately for Target's position, this is not the law. The claims, along with the specification, provide sufficient information for a POSITA to understand the claims' plain meaning. There is no need here for extrinsic evidence to explain the claims. And, only in the exacting circumstances where a patentee acts as lexicographer, or there was a clear disavowal should the claims be interpreted to mean something other than their plain and ordinary meaning. *See*, *e.g.*, *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014). The patentee did not act as a lexicographer and there is no clear disavowal that would support changing the meaning of the claims from what is already provided.

Target's proposed construction leads to a specific embodiment of the broader claimed invention claimed by the '533 Patent. Reading the claims to require "two successive beacons from the first wireless transceiver" suggests a synchronization between the first and second wireless devices that may be present, but is not required by the claims. Target's proposed construction, on its face, contemplates only communication between beacon sender and beacon receiver. This neglects other communications that are both encompassed by the claims and described in the specification and ties the duration of a time slot to beacons send to a PDK from an RDC when there is no reason to do so. *See*, *e.g.*, The Declaration of Kurt Humphrey (the "Humphrey Decl."), ¶¶ 22, 24. The construction implies limitation of the claims to bi-directional communication between the first and second wireless devices.

The requirement for bi-directional communication is not in the claims and should not be imported to the claims. First, context of the claims already provides a clear understanding of

812277_1

Plaintiff's Opening Claim
Construction Brief

what is meant by "time slot information." *Phillips*, 415 F.3d at 1314 ("the context in which a term is used in the asserted claim can be highly instructive."). Second, the claims do not limit themselves to such a specific read. Third, neither the '533 Patent's specification nor its prosecution history suggest that such a limitation is necessary. Fourth, a POSITA would not expect such a limitation.

The plain language and the context of the claims provide clarity for "time slot information." Limitation 1.d, for example, provides "a timer operatively coupled to the second wireless transceiver used to indicate when to switch from sleep mode to active mode based on time slot information." McCaulley Decl., Exhibit 1 at Col. 41:51-53. Thus, "time slot information" is clearly understood as a basis for the claimed timer switching the second wireless transceiver from sleep mode to active mode. Limitation 11.a presents effectively the same situation. In both claim 1 and 11, "time slot information" provides the basis for the timer switching a wireless transceiver from a sleep mode to a wake mode and does not need further construction.

Staying with the express claim language, neither claim 1 nor 11 require Target's proposed limitation. To the contrary, the claims allow for other communications besides bi-directional communication between the first and second wireless devices. Although in practice, an embodying second wireless device may respond to the first wireless device, nothing in the claim requires such a back and forth. As further discussed below in connection with Target's indefiniteness allegation, even the last "server" limitations of claim 1 and 11 do not require the second wireless device to communicate through the first wireless device. For example, claim 1 provides in limitation 1.f: "...a server configured to receive data from the second wireless device when in proximity to the first wireless device." McCaulley Decl., Exhibit 1 at Col. 42:28-32. The claim only requires that a server receives data from the second wireless device. An intermediate step of sending the data back to the server through the first wireless device may be

812277_1

Plaintiff's Opening Claim
Construction Brief

permissible, but it is not necessary.  *See, e.g., Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed. Cir. 2001) ("In the parlance of patent law, the transition "comprising" creates a presumption that the recited elements are only a part of the device, that the claim does not exclude additional, unrecited elements.").

The '533 Patent's specification and prosecution history support a plain and ordinary read of "time slot information."  The '533 Patent's specification provides that "a 'timeslot' is defined as a period of time that information is communicated between two devices."  McCaulley Decl., Exhibit 1 at Col. 13:20-22.  This is consistent with a POSITA's plain and ordinary understanding of "time slot information."  Humphrey Decl., ¶¶ 18-20.  Target's narrowing construction comes from an outside source and does not appear to have any connection to the '533 Patent's teaching in this respect.  McCaulley Decl., Exhibit 2 at Target-Proxense-PA_0011065 ("Network devices that wish to communicate with the PAN coordinator must attempt to do it *in the time between two successive beacons*.  This period of time is called the contention access period (CAP).") (emphasis added to indicate similarity between Target's extrinsic evidence and Target's proposed construction).  Extrinsic treatises can be helpful to understand the underlying technology, but it is not necessary to depart from the intrinsic evidence of the '533 Patent.  The '533 Patent claims and specification are straightforward and are consistent with a POSITA's expectations.  Humphrey Decl., ¶¶ 18-20, 25-28.

Target will likely advance its false narrative that the specification and prosecution history disclose a PDK that ***cannot*** communicate with a server and that ***only*** communicates with the beacon sending RDC.  This is nothing more than a false narrative and clings to specific embodiments in an effort to import unnecessary limitations into the claims.  Nothing in the specification or prosecution history contains a disavowal of scope suggesting the PDK must only communicate with the RDC.  And, the specification describes a sophisticated PDK in an environment that allows the PDK to communicate directly with the claimed server.  *See, e.g.,*

812277_1

McCaulley Decl., Exhibit 1 at Col. 6:40-47 (PDK may be, *e.g.*, a cell phone), Cols. 9:14-10:14 (PDK may talk to external RF devices and may communicate according to one or more different wireless protocols), Col. 10:21-38 (PDK may be granted direct access to a server by a gatekeeper RDC), Col. 15:15-21 (PDK may have access to the back-end server); *see* Humphrey Decl., ¶ 22.

Given the express claim language, the specification support, and the lack of any clear disavowal, a POSITA would not expect to find the claims limited to a bi-directional communication environment.  Humphrey Decl., ¶ 22.  The claims are clear as they are drafted and fully capable of being understood according to their plain and ordinary meaning.  If the Court is disposed to construe claims 1 and 11 based on the timeslot definition in the '533 Patent's specification ("a period of time that information is communicated between two devices"), that is acceptable.  However, Proxense maintains that the original claim language ("time slot information") will be easier for a jury to understand than "a period of time that information is communicated between two devices information" or "information about a period of time that information is communicated between two devices."

### B.     Claims 1, 7, 11, and 17 are Not Indefinite

| Claim Language (terms at issue in italics and underlined) | Proxense's Position | Target's Position |
|---|---|---|
| **[1.f]** a server configured to receive data from the second wireless device when in proximity to the first wireless device. | Not indefinite; plain and ordinary meaning | Indefinite |
| **7.** The system of claim 1, further the server is configured to gather information from the second wireless device. | | |
| **[11.f]** sending data to a server, when in proximity to the first wireless device. | | |
| **17.** The method of claim 11, wherein the server is configured to gather information from a second wireless device, the second wireless device including the wireless transceiver. | | |

Plaintiff's Opening Claim
Construction Brief

Proxense expects Target to argue that a POSITA, reading the intrinsic evidence, particularly in view of the '533 Patent's specification, would have no informed and confident choice among multiple possible meanings for claims 1, 7, 11, and 17 of the '533 Patent.  Target's position is wrong and should be rejected; the claims are not indefinite.  As an initial matter, the claims do not reasonably present multiple possible meanings.  Second, Target's characterization of the '533 Patent's specification is factually wrong.  Third, Target's attempt to read preferred embodiments from the '533 Patent specification into the claims is legally improper.  Further weighing against all of this is the heavy burden of clear and convincing evidence that a POSITA would not have reasonable certainty of a claim's scope required for indefiniteness.  *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1344 (Fed. Cir. 2016) (requiring clear and convincing evidence that a person skilled in the art would not understand a claim's scope with reasonable certainty); *Match Grp., LLC v. Bumble Trading Inc.*, No. 6:18-CV-00080-ADA, 2018 U.S. Dist. LEXIS 235353, at *19 (W.D. Tex. Dec. 18, 2018).  Target cannot carry this burden in light of what the '533 Patent claims, discloses, and how a POSITA would understand the '533 Patent.  Claims 1, 7, 11, and 17 of the '533 Patent are not indefinite.

> ### 1.     *A POSITA Would Not Struggle with the Scope of Claims 1, 7, 11, and 17 as Issued.*

Target is trying to complicate straight forward claim language.  Claim 1 requires a server that receives data from the second wireless device when the second wireless device is in proximity to the first wireless device.  Claim 11 requires sending data to a server, when the claimed wireless transceiver is in proximity to the first wireless device.  These limitations would not cause a POSITA to struggle in comprehending the scope of the invention with reasonable certainty.  Humphrey Decl., ¶¶ 25-27.

The '533 Patent's claim language and specification provides the necessary context for this certainty.  *See, e.g., Barakan Wireless IP Holdings, L.P. v. Sprint Communs. Co., L.P.*, 2020

Plaintiff's Opening Claim
Construction Brief

U.S. Dist. LEXIS 198124, 71-72; 2020 WL 6271162 (E.D. Tex. Oct. 2020)(citing *Phillips*, 415 F.3d at 1314 ("the context in which a term is used in the asserted claim can be highly instructive.")).  For example, the first wireless device of claim 1 has a known physical location and it may be a fixed location.  *See, e.g.,* McCaulley Decl., Exhibit 1 at Claim 3.  The second wireless device of claim 1 may be a mobile device, such as a watch, a mobile computing device, or a cellular phone.  *See, e.g.,* McCaulley Decl., Exhibit 1 at Claims 8 and 9.  A POSITA would understand a server as something that would calculate and track relative locations between, *e.g.*, the wireless devices.  *See, e.g.,* McCaulley Decl., Exhibit 1 at Claim 2.  But, a POSITA would not expect a server itself to move or be responsible for generating proximity data in the first instance.  Humphrey Decl., ¶ 25.  Accordingly, it would be clear to a POSITA that the last limitation of claim 1 deals with a server receiving data from the second wireless device when the second wireless device is in proximity with the first wireless device.  *Id.*

Likewise, for claim 11: a first wireless devices sends a beacon where the beacon has a known physical location.  *See, e.g.,* McCaulley Decl., Exhibit 1 at Claim 11.  The wireless transceiver may be integrated into a wireless device, such as a watch, a mobile computing device or a cellular phone.  *See, e.g.,* McCaulley Decl., Exhibit 1 at Claims 18, 19.  Again, a POSITA would not expect a server to move itself or be responsible for generating proximity data in the first instance and would not consider that the server needs to be in proximity to the first wireless device.  Humphrey Decl., ¶ 25.  Instead, a POSITA would understand that the claimed method requires sending data to the server when the wireless transceiver is in proximity to the first wireless device.  *See, e.g.,* McCaulley Decl., Exhibit 1 at Claim 11.

The claim language is silent on the specific path by which the server receives data. Claim 1 and claim 11 are both open-ended claims using the transitional phrase, "comprising." *See, e.g., Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed. Cir. 2001) ("In the parlance of patent law, the transition "comprising" creates a

Plaintiff's Opening Claim
Construction Brief

presumption that the recited elements are only a part of the device, that the claim does not exclude additional, unrecited elements."). Target should not be allowed to import limitations to these claims in the form of preferred embodiments where there is no basis for doing so.

Claim 7 is apparently subject to a minor typographical/grammatical error ("...further the server is configured to..."). McCaulley Decl., Exhibit 1 at Claim 7. Likely, the claim should read: "The system of claim 1, wherein the server is further configured to..." This would be of little consequence to a POSITA. Humphrey Decl., ¶ 28. First, the error is not so drastic to make the claim unreadable. Second, the corollary method claim, claim 17, would provide a contextual clue for a POSITA looking for more to clarify the server's configuration ("...wherein the server is configured to gather information from a second wireless device..."). McCaulley Decl., Exhibit 1 at Claim 17.

### 2. Neither the Specification nor the Claims Require the Second Wireless Device to Communicate with the Server through the First Wireless Device.

Target's indefiniteness argument appears to be an attempt to insert a limitation that the claimed second wireless device must communicate directly (*e.g.,* , apparently without intervening network infrastructure) with the server and limit the second wireless device's communication with the server to a path including the beacon sending first wireless device. Target states, "[i]ndeed, in the specification of the Asserted Patent (including all priority documents), the Plaintiff **never** discloses a server receiving data directly from the wireless device that it refers to as the 'PDK', which Plaintiff has conceded in this case is the 'second wireless device' of the Asserted Claims." McCaulley Decl., Exhibit 3. This must be rejected as there is no limitation requiring direct communication between the second wireless device without network infrastructure and the '533 Patent's specification does not limit the communication path as Target falsely alleges. To the contrary, the '533 Patent's specification provides various examples of the second wireless devices in communication with a server. *See, e.g.,* McCaulley

Decl., Exhibit 1 at 6:28-7:37, 10:21-38, 15:15-21, 30:29-51, 37:16-57; Humphrey Decl., ¶ 22.

And, no POSITA would expect a second wireless device (or a PDK) to communicate with a

server without adequate network infrastructure, including using infrastructure such as RDCs to

reach a server.  Humphrey Decl., ¶ 26; *See, e.g.,* McCaulley Decl., Exhibit 1 at 10:21-38.

Target's characterization of the '533 Patent's disclosure has to be wrong because, at the very

minimum, in January 2006 the '533 Patent explicitly discloses that the PDK could be a cell

phone communicating over multiple communication protocols in a time when cell phones readily

communicated with servers through various network infrastructure. *See, e.g.,* McCaulley Decl.,

Exhibit 1 at 6:43-47; 9:14-32.

### 3.     *Reading Preferred Embodiments into the Claims is Improper*

Target's characterization of the '533 Patent specification cannot be allowed to

unnecessarily limit the '533 Patent's claims.  This is because, as established above, Target's

characterization is based on a wrong reading of the specification, and because, as a matter of law,

a preferred embodiment should not be imported into the claims.  Target is trying to import a

limitation that forces a particular communication path between the second wireless device and

the server.  As established, no specific communication path is required by the claims.  The

specification does not contain any clear disavowal of claim scope in this respect.  Proxense

should not now be punished with a limited claim scope based on Target's self-serving

characterization of the specification.  *See, e.g., Barakan Wireless IP Holdings, L.P. v. Sprint

Communs. Co., L.P.*, 2020 U.S. Dist. LEXIS 198124, 71; 2020 WL 6271162 (E.D. Tex. Oct.

2020) (finding the context of the claims more instructive to understanding the claims than

preferred embodiments from the specification).

## V.     Conclusion

The '533 Patent's claims are clear and provide certainty of their coverage as they are

drafted.  There is no need for the Court to import Target's proposed claim construction for "time

812277_1

slot information."  And, the claims are not indefinite; they provide a POSITA reasonable certainty on their own.  The specification's underlying description would not confuse a POSITA as to the claims' coverage.  The Court should apply a plain and ordinary meaning to the claims and should not find them indefinite.

Date: May 24, 2021                    Respectfully submitted,

*/s/ Robert Christopher Bunt*

Robert Christopher Bunt
State Bar No. 00787165
Charles Ainsworth
State Bar No. 00783521
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 418
Tyler, TX 75702
903/531-3535
E-mail: rcbunt@pbatyler.com
E-mail: charley@pbatyler.com

**RICHARD T. MCCAULLEY, JR.** (*pro hac vice*)
HALEY GUILIANO LLP

111 North Market Street
Suite 900
San Jose, CA 95113
(669) 213-1071
richard.mccaulley@hglaw.com
COUNSEL for PLAINTIFF

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 24th day of May, 2021, with a copy of this document via the Court's CM/ECF system.

*/s/ Robert Christopher Bunt*

ROBERT CHRISTOPHER BUNT

1

Plaintiff's Opening Claim
Construction Brief
