## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |  |
|---|---|---|
| PROXENSE, LLC,<br>*Plaintiff*<br><br>-vs-<br><br>TARGET CORPORATION<br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **6:20-CV-879-ADA**<br><br>**JURY TRIAL DEMANDED** |

## ORDER

Came on for consideration this date is Defendant Target Corporation's Motion to Dismiss Count 1 of Plaintiff Proxense, LLC's First Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def.'s Mot. ECF No. 19. Target filed its motion on January 18, 2021. Proxense filed its response on February 1, 2021. Pl.'s Resp. ECF No. 20. Target filed its Reply on February 8, 2021. Def.'s Reply ECF No. 21. After careful consideration of the above briefing, the Court **DENIES** Target's Motion to Dismiss.

## I.     BACKGROUND

On September 28, 2020, Proxense filed this lawsuit alleging patent infringement of United States Patent No. 10,455,533 ("the '533 patent"). *See generally* Compl., ECF No. 1. On December 14, 2020, Proxense amended its complaint, alleging infringement of the same patent. *See generally* Am. Comp. ECF No. 15. The '533 patent, titled WIRELESS NETWORK SYNCHRONIZATION OF CELLS AND CLIENT DEVICES ON A NETWORK, discloses one or more "reader decoder circuit[s]," which emit a wireless signal, or "beacon" to interact with a "personal digital key" carried by a user of the system. *Id.* at 3-4.

1

In its Motion to Dismiss, Target argues that Proxense's complaint does not include plausible allegations of induced and contributory infringement by Target, because the complaint does not include plausible allegations for an underlying act of direct infringement by Target customers "using" the asserted system claims of the '533 patent. Def.'s Mot. at 6. Specifically, Target argues that Proxense has not and cannot plead that the Target customer uses the claimed "first wireless device" component of the '533 patent because the Target customer does not *cause* the accused "first wireless device" (Target Bluetooth beacon) to perform its claimed operation— "transmit a beacon including a source identifier." *Id.* at 7. Target contends that, because the Target Bluetooth beacon transmits messages regardless of customer interaction, Proxense has failed to plausibly allege that the Target customer "place[s] the claimed system as a whole into service." *Id.* at 7-8 (citing *Iqbal*, 556 U.S. at 678-679; *Twombly*, 550 U.S. at 557; *Centillion Data Systems, LLC v. Qwest Communications International, Inc.*, 631 F.3d 1279, 1284-1285 (Fed. Cir. 2011); *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1239-1240 (Fed. Cir. 2017)).

In its response, Proxense asserts that there is no legal requirement that a direct infringer of a system claim *directly* control each individual component of the claimed system. Pl.'s Resp. at 3. Proxense contends that while the Target customer does not directly cause the Target Bluetooth beacon to transmit messages, the system *as a whole* is dormant until the customer initiates the system by installing the Target App, enabling Bluetooth functionality on his mobile device, and bringing his mobile device into the store. *Id.* at 5. Proxense argues that Target customers can "put into service" the entire claimed system and thus, indirectly control the accused "first wireless device." *Id.* at 6.

Target replies by asserting that the Target customer does not even indirectly control the Target Beacon device because any interactions between the customer's mobile device and the

Target Bluetooth beacon are strictly one-way. Def.'s Reply at 6. Again, Target emphasizes that in order to "use" the claimed system, the alleged direct infringer must cause the claimed functionality of each element of the system. *Id.*

## II.   LEGAL STANDARD

Upon motion or *sua sponte*, a court may dismiss an action that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts as true all well-pleaded facts, viewing them in the light most favorable to the nonmovant. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court need not blindly accept each and every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions "masquerading as a factual conclusion." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 652, 678 (2009).

To survive the motion to dismiss, a nonmovant must plead enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570. The court determines whether the plaintiff has stated both a legally cognizable and plausible claim; the court should not evaluate the plaintiff's likelihood of success. *Lone Star Fund v. (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Based upon the assumption that all the allegations in the complaint are true, the factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

When the nonmovant pleads factual content that allows the court to reasonably infer that the movant is liable for the alleged misconduct, then the claim is plausible on its face. *Iqbal*, 556 U.S. at 678. The plausibility standard, unlike the "probability requirement," requires more than a

sheer possibility that a defendant acted unlawfully. *Id.* Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 545. The pleading standard announced in Rule 8(a)(2) does not require detailed factual allegations but demands greater specificity than an unadorned "the-defendant-unlawfully-harmed-me accusation." Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Nor does a complaint comply with the standard if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. Evaluating the plausibility of a claim is a context-specific process that requires a court to draw on its experience and common sense. *Iqbal*, 556 U.S. at 663–64.

### III.   ANALYSIS

The Parties do not dispute that induced and contributory infringement requires underlying direct infringement, direct infringement requires use of the claimed system, and use requires the control and benefit from each element of the claimed system. Pl.'s Resp. at 3; *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017) (stating "a finding of direct infringement is predicate to any finding of indirect infringement."); 35 U.S.C. § 271(a) (stating direct infringement of a system claim includes use of the patented invention); *Intellectual Ventures*, 870 F.3d at 1329 (stating "to use a system, a person must control (even if indirectly) and benefit from each claimed component."). The Parties also agree that an alleged infringer's control can be direct or indirect. Def.'s Resply at 5-6; The Parties do not dispute that direct control—*i.e.*, exercising physical control or possession over a device—does not apply here. Def.'s Reply at 3; *See* Pl.'s Resp. at 6.

The core issue in the instant dispute is determining what constitutes "indirect control" over an element in a system claim—whether there are plausible allegations that Target customers indirectly control the Target beacon device. Target argues that in order for an alleged infringer to have indirect control over an element of the claimed system, the alleged infringer must *cause* the claimed operation of the element. Def.'s Reply at 6-7. Proxense argues that in order for an alleged infringer to have indirect control over an element of the claimed system, the alleged infringer must perform actions that enable the function of the system as a whole. Pl.'s Resp. at 5. The Court agrees with Proxense for the reasons below.

In *Intellectual Ventures*, the Federal Circuit clarified that "to use a system, a person must control (even if indirectly) and benefit from *each claimed component*." *Intellectual Ventures*, 870 F.3d at 1329 (emphasis added). However, it does not follow that to control each claimed component, the alleged infringer must *cause* the operation of each claimed component. Rather, the Federal Circuit explicitly defined control as "the ability to place the *system as a whole* into service." *Id.* (emphasis added) (*quoting Centillion*, 631 F.3d at 1284).

The Court agrees with Proxense that a Target customer could plausibly control the Target beacon device indirectly, because but-for the customer's actions of downloading the Target application, enabling Bluetooth on a mobile device, and entering the store, the claimed system as a whole would not be put into service. *Centillion*, 631 F.3d at 1285 ("This is "use" because, but for the customer's actions, the *entire system* would never have been put into service.") (emphasis added).

Target points to *Centillion*, citing that "if the customer had not made a request, then the back-end processing would not be put into service[,]" suggesting that there is a requirement for the alleged infringer to cause each individual element. Def.'s Reply at 4-5; *Centillion*, 631 F.3d at

1285. However, the very next sentence in the *Centillion* opinion reads "By causing the *system as a whole* to perform this processing and obtaining the benefit as a result, the customer has "used" the system under § 271(a)." *Centillion*, 631 F.3d at 1285 (emphasis added). In *Centillion*, without the customer's request, the system as a whole would not be put into service. *See Id.* Alternatively, the customer's request constitutes "use" because it causes the system as a whole to be put into service. *See Id.* Likewise, a Target customer who performs actions that cause the system as a whole to be put into service has control over the entire system, including all of its constituent elements.

Because a Target customer plausibly has the ability to put the system as a whole into service and benefit as a result, Proxense can plausibly allege underlying direct infringement by Target customers necessary for plausible allegations of induced and contributory infringement by Target.

## IV.    CONCLUSION

Having determined that Proxense's First Amended Complaint meets the pleading standards of Rule 12(b)(6) with respect to Count 1,

**IT IS ORDERED** that the Motion to Dismiss (ECF No. 19) is **DENIED**.

**SIGNED** this 28th day of July, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE